# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BNSF RAILWAY Company,<br>a Delaware Corporation, | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| vs. | )<br>) | Case No. CIV-19-769-G |
| CITY OF EDMOND, OKLAHOMA,<br>An Oklahoma Municipal Corporation,<br>CITY OF DAVIS, OKLAHOMA,<br>An Oklahoma Municipal Corporation,<br>TODD HIETT, in his capacity as<br>Chairman of the Oklahoma Corporation<br>Commission,<br>BOB ANTHONY, in his capacity as<br>Vice-Chairman of the Oklahoma<br>Corporation Commission, and<br>DANA MURPHY, in her capacity as<br>Commissioner of the Oklahoma<br>Corporation Commission, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

## MOTION FOR PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT

Respectfully Submitted,

*/S/ R. Richard Love, III*
R. Richard Love, III, OBA #14770
J. Dillon Curran, OBA #19442
Bryan R. Lynch, OBA #33559
1700 One Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102-7101
405/ 272-5711
rlove@cwlaw.com
dcurran@cwlaw.com
blynch@cwlaw.com

**Attorneys for Plaintiff BNSF Railway Company**

# TABLE OF CONTENTS

OVERVIEW ...................................................................................................................2

FACTS .........................................................................................................................3

APPLICABLE LEGAL STANDARDS ........................................................................5

   A.   The Standard for a Preliminary Injunction. .......................................................5

   B.   The Preemption Standard. .................................................................................6

ARGUMENT ................................................................................................................7

   A.   BNSF is Likely to Succeed on the Merits because Oklahoma's Blocked
        Crossing Statute is Preempted by the ICCTA and the FRSA. ..........................7

        1.   The ICCTA grants the federal Surface Transportation Board exclusive
               authority over transportation by rail carriers and the operation of tracks
               and facilities, expressly preempting Oklahoma's efforts to govern
               railroad operations through its Blocked Crossing Statute. ..........................7

        2.   Oklahoma's Blocked Crossing Statute is preempted by FRSA. ...............10

   B.   BNSF Will Suffer Immediate, Concrete and Irreparable Harm in the
        Absence of Preliminary Injunctive Relief by the Court. ...................................14

   C.   The Harm to BNSF Substantially Outweighs Any Risk of Harm to the OCC,
        Davis or Edmond. .............................................................................................15

   D.   The Public Interest Will Not be Adversely Affected by the Granting of an
        Injunction. .........................................................................................................16

CONCLUSION ............................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Allied Erecting & Dismantling Co. v. Surface Transp. Bd.*, 835 F.3d 548, 550 (6th Cir. 2016) ................................................................................................................ 8

*Ass'n of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1097-98 (9th Cir. 2010) ...................................................................................................... 8

*Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012) ................................................ 6

*Burlington N. & Santa Fe Ry. Co. v. Dep't of Transp.*, 206 P.3d 261 (Or. 2009) ....... 10

*Chamber of Commerce of U.S. v. Edmonson*, 594 F.3d 742, 765 (10th Cir. 2010) ...... 6

*City of Seattle v. Burlington N. R. Co.*, 41 P.3d 1169 (Wa. 2002) ............................... 10

*Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 890 (8th Cir.2012) ...................................... 10

*CSX Transp. Inc. v. Georgia Pub Serv. Comm'n.*, 944 F. Supp. 1573, 1581 (N.D. Ga. 1996) ...................................................................................................... 8

*CSX Transp., Inc. v. City of Plymouth*, 92 F. Supp. 2d 643, 659 (E.D. Mich. 2000), *aff'd*, 283 F.3d 812 (6th Cir. 2002) ............................................... 7, 11, 13

*CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 662 (1993) ..................................... 12

*CSX Transp., Inc. v. Williams*, No. 3:16CV2242, 2017 WL 1544958, at *2 (N.D. Ohio (2017) ....................................................................................................... 9

*Delaware v. Surface Transp. Bd.*, 859 F.3d 16, 18 (D.C. Cir. 2017) ......................... 8, 9

*Driesen v. Iowa, Chicago & E. R.R. Corp.*, 777 F. Supp. 2d 1143, 1149 (N.D. Iowa 2011) .......................................................................................................... 11, 13

*Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796 (5th Cir. 2011) .................................... 9

*Gov't Suppliers Consolidating Serv. V. Bayh*, 734 F. Supp. 853, 863 (S.D. Ind. 1990) ........................................................................................................... 14

*Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) ........................ 6

*Henning v. Union Pacific R.R. Co.*, 530 F.3d 1206, 1211-12 (10th Cir. 2008) ........... 11

*Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985) .............. 6

Lewis v. Norfolk S. Ry. Co., 618 F. Supp. 2d 833, 843 (W.D. Tenn. 2008) ............... 11

*M'Culloch v. Maryland*, 17 U.S. 316, 405-06 (1819) ................................................... 6

*N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252 (3d Cir. 2007) ...... 8

Norfolk S. Ry. Co. v. Shanklin, 529 U.S. 344, 352, (2000) ........................................ 11

*Ohio Oil Co. v. Conway*, 279 U.S. 813, 815 (1929) .................................................... 14

*People v. Burlington N. Santa Fe R.R.*, 148 Cal. Rptr. 3d 243 (2012) ......................... 10

*State v. BNSF Ry. Co.* 432 P.3d 77 (Kan. App. 2018) ................................................. 10

*State v. Norfolk S. Ry. Co.*, 107 N.E. 3d 468, 476 (Ind. 2018) ................................. 9, 10

*Univ. of Texas v. Camensich* 451 U.S. 390, 395 (1981) ............................................... 6

*Vermont Railway, Inc. v. Town of Shelburne*, 287 F. Supp. 3d 493, 504 (D. Vt. 2017) ........................................................................................................... 15

*Village of Mudelein v. Wisconsin Cent. R.R.*, 882 N.E.2d 544, 553 (Ill. 2008) ......... 13


**Statutes**

49 C.F.R. § 213.9(a) ................................................................................................... 11
49 C.F.R. § 232.201 .................................................................................................... 12
49 C.F.R. § 232.202 .................................................................................................... 12
49 C.F.R. § 232.203 .................................................................................................... 12
49 C.F.R. § 232.204 .................................................................................................... 12

49 C.F.R. § 232.205 ............................................................................................ 12
49 C.F.R. § 232.206 ............................................................................................ 12
49 C.F.R. § 232.207 ............................................................................................ 12
49 C.F.R. § 232.208 ............................................................................................ 12
49 C.F.R. § 232.209 ............................................................................................ 12
49 C.F.R. § 232.210 ............................................................................................ 12
49 C.F.R. § 232.211 ............................................................................................ 12
49 C.F.R. § 232.212 ............................................................................................ 12
49 C.F.R. § 232.213 ............................................................................................ 12
49 C.F.R. § 232.214 ............................................................................................ 12
49 C.F.R. § 232.215 ............................................................................................ 12
49 C.F.R. § 232.216 ............................................................................................ 12
49 C.F.R. § 232.217 ............................................................................................ 12
49 C.F.R. § 232.219 ............................................................................................ 12
49 C.F.R. § 232.281 ............................................................................................ 12
49 C.F.R. § 234.105 ............................................................................................ 12
49 C.F.R. § 234.106 ............................................................................................ 12
49 C.F.R. § 234.107 ............................................................................................ 12
49 U.S.C. § 10101 ................................................................................................. 7
49 U.S.C. § 10102(6) ............................................................................................ 7
49 U.S.C. § 10102(9) ............................................................................................ 8
49 U.S.C. § 20101 ..................................................................................... 7, 10, 11
49 U.S.C. § 20103(a) ........................................................................................... 11
49 U.S.C. § 20106(a) ........................................................................................... 11
49 U.S.C. §§ 10501(b) ........................................................................................... 7
66 O.S. § 190(A) ........................................................................................... 9, 16
66 O.S. § 190(C)(1) ....................................................................................... 9, 16
66 O.S. § 190(C)(2) ..................................................................................... 13, 16
66 O.S. § 190(C)(2)(c). ....................................................................................... 16
66 O.S. § 190(C)(3) ............................................................................................ 14
66 O.S. § 190(C)(4) .............................................................................................. 8
66 Okla. Stat. Ann. § 190 ............................................................................... 2, 3

**Other Authorities**

*Oklahoma City police ask residents to report trains blocking roads*, The
    Oklahoman (Aug. 7, 2019) ............................................................................... 14
U.S. Const. art. VI, cl. 2 ....................................................................................... 6

**Rules**

Federal Rule of Civil Procedure 65 ....................................................................... 1

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BNSF RAILWAY Company, | ) | |
| a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-19-769-G |
| | ) | |
| CITY OF EDMOND, OKLAHOMA, | ) | |
| An Oklahoma Municipal Corporation, | ) | |
| CITY OF DAVIS, OKLAHOMA, | ) | |
| An Oklahoma Municipal Corporation, | ) | |
| TODD HIETT, in his capacity as | ) | |
| Chairman of the Oklahoma Corporation | ) | |
| Commission, | ) | |
| BOB ANTHONY, in his capacity as | ) | |
| Vice-Chairman of the Oklahoma | ) | |
| Corporation Commission, and | ) | |
| DANA MURPHY, in her capacity as | ) | |
| Commissioner of the Oklahoma | ) | |
| Corporation Commission, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT

Plaintiff BNSF Railway Company ("BNSF"), pursuant to Federal Rule of Civil Procedure 65, seeks a preliminary injunction prohibiting Defendant City of Edmond ("Edmond"), Defendant City of Davis ("Davis"), and Defendants Todd Hiett, Bob Anthony, and Dana Murphy as Chairman, Vice-Chairman, and Commissioner, respectively, of the Oklahoma Corporation Commission (the "OCC") from prosecuting enforcement actions under the Oklahoma Blocked Crossing Statute against BNSF.

# OVERVIEW

The Blocked Crossing Statute, 66 Okla. Stat. Ann. § 190 (enacted effective July 1, 2019), prohibits railcars from blocking street intersections for longer than 10 (or, in limited instances, 20) minutes.  Edmond issued BNSF two citations for separate alleged violations of the new law, and Davis issued one.  In each instance BNSF's trains were conducting a "meet and pass" maneuver where one train is diverted from the main line to a stationary position on a side track (a "siding") so a different on-coming train (travelling in the opposite direction) can pass on the main line.  The Blocked Crossing Statute is preempted by federal law, which exclusively regulates such railroad operations.

**"Meet and pass" maneuvers implicate key railroad operational choices** made numerous times daily to facilitate train movements on the 957 miles of BNSF track in Oklahoma and throughout the other 27 states where BNSF operates, such as: the quantity of traffic on the rails, train length, train speed, scheduling, the location and availability of sidings and priority given to certain cargo (including hazardous materials shipments that, pursuant to federal law, must be forwarded to their destination without delay).  These operational decisions impact where, when and for how long a train sits on a siding, sidings which may intersect one or more of the 1,000 plus highway rail grade crossings on BNSF's lines in Oklahoma.[1]  Unforeseeable events such as mechanical failures and weather also

---

[1] According to data maintained by the Federal Railroad Administration, there are 1,079 public, at-grade crossings on the BNSF system in Oklahoma. *See* Fed. R.R. Admin., *Query by Location*, *available at* https://safetydata.fra.dot.gov/OfficeofSafety/PublicSite/ Crossing/XingLocResults.aspx?state=40&countycity=&railroad=BNSF&reportinglevel= INDIVIDUAL&radionm=County&street=&xingtype=3&xingstatus=1&xingpos=1 (page visited Aug. 26, 2019).

impact when trains must stop in a position that blocks a crossing and how long the blockage continues.

Every jurisdiction to consider the issue ultimately has decided that (1) Federal railroad operational laws expressly preempt state blocked crossing laws, and (2) Federal railroad safety laws cover the issue of blocked of crossings so as to preempt state laws concerning the same subject.

Injunctive relief will preserve the *status quo* pending resolution of this case and is warranted because (1) this Court is likely to follow the universal weight of authority finding state blocked crossing laws are preempted, (2) there is a threat of irreparable harm which (3) outweighs any harm to Defendants and (4) the injunction will not adversely affect public interest.

## **FACTS**

1.      BNSF is a railroad company incorporated under the laws of Delaware that operates interstate trains by rail throughout the United States for compensation, including in the state of Oklahoma.

2.      Edmond is an Oklahoma municipal corporation.

3.      Davis is an Oklahoma municipal corporation.

4.      Defendants Todd Hiett, Bob Anthony, and Dana Murphy are Chairman, Vice-Chairman, and Commissioner, respectively, of the OCC.

5.      The OCC is a regulatory body established by the Oklahoma Constitution.

6.      Effective July 1, 2019, Oklahoma enacted 66 Okla. Stat. Ann. § 190, which prohibits railcars from blocking vehicular traffic at railroad intersections for more than ten

(10) minutes, with a number of exceptions including a one-time exception for an additional ten (10) minutes (hereinafter the "Blocked Crossing Statute").

7.      The Blocked Crossing Statute seeks to grant jurisdiction to municipalities, county sheriffs, and state highway patrol officers to issue citations to railroad companies for purported violations and requires these citations to be enforced before the OCC.

8.      Through the issuance of an emergency rule (OAC 165:32-1-13) entitled "Commission Enforcement of Blocked Crossing Citations," the OCC instructs law enforcement officers how to institute enforcement actions before the OCC through the filing of a verified complaint, which then results in the OCC Secretary issuing a Citation for Contempt and setting a hearing date to adjudicate the citation before an OCC Administrative Law Judge (OAC 165:5-19-1).

9.      On July 17, 2019, and July 29, 2019, respectively, an Edmond police officer issued separate citations to BNSF alleging violations of the Blocked Crossing Statute at intersections within Edmond.

10.     On July 30, 2019, the City of Edmond's Assistant City Attorney filed a Complaint against BNSF before the OCC to institute enforcement proceedings for the two Edmond citations, and the OCC Secretary issued a Citation and Notice of Hearing, setting a hearing for contempt on August 28, 2019, at 8:30 a.m. at the OCC Oklahoma City Jim Thorpe Office Building.  True and correct copies of the two citations, the City of Edmond Complaint, and the OCC Citation and Notice of Hearing are appended as Exhibit "1."

11.     On July 16, 2019, a Davis police officer issued a citation to BNSF alleging violation of the Blocked Crossing Statute at an intersection within Davis.

12.     On August 1, 2019, the City of Davis's City Attorney filed a Complaint against BNSF before the OCC to institute enforcement proceedings for the Davis citation, and the OCC Secretary issued a Citation and Notice of Hearing, setting a hearing for contempt on August 28, 2019, at 8:30 a.m. at the OCC Oklahoma City Jim Thorpe Office Building.  True and correct copies of the citation, the City of Davis Complaint, and the OCC Citation and Notice of Hearing are appended as Exhibit "2."

13.     Edmond and Davis seek orders for "contempt for alleged violations of the Commission rules governing railroads in the State of Oklahoma" and fines in the combined total amount of $3,000.  Exhibits "1" and "2."

14.     Numerous operational, safety, federal regulatory and economic factors influence when a train stoppage blocks a vehicle intersection and the duration of the stop, including without limitation opposite traveling train "meet and passes", emergency operational events, limitations on train employees' on-duty time imposed by the federal Hours of Service Laws, federal requirements to conduct brake tests after reconnecting cars detached from a train, train speed and train length.  Affidavit of Jeffrey Garrels appended as Exhibit "3."

15.     BNSF alleges additional facts regarding its operations, infrastructure and train stoppages enumerated in Exhibit "3," which is incorporated herein by reference.

## APPLICABLE LEGAL STANDARDS

### A. The Standard for a Preliminary Injunction.

Injunctive relief is warranted where (1) movant has a likelihood of success on the merits, (2) there is a threat of irreparable harm which (3) outweighs any harm to Defendants

and (4) the injunction would not adversely affect the public interest. *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012). These factors are not considered in isolation from each other and no one factor is dispositive. A preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. *Univ. of Texas v. Camensich* 451 U.S. 390, 395 (1981). The Federal Rules of Evidence do not apply to a preliminary injunction hearing. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003).

## B. The Preemption Standard.

The Supremacy Clause provides that the laws of the United States "shall be the supreme law of the Land…any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, federal law preempts contrary state law. *See M'Culloch v. Maryland,* 17 U.S. 316, 405-06 (1819). Preemption can be either express or implied. *Hillsborough Cty. v. Automated Med. Labs., Inc.,* 471 U.S. 707, 713 (1985). State laws are expressly preempted when they fall within the scope of a federal provision explicitly precluding state action. *See id.* Alternatively, state laws may be impliedly preempted either as a result of conflict or field preemption. *See id.* When a federal statute contains an express preemption clause, the Court must focus on the plain language of the statute to determine if the state law falls within the scope of a federal preemption provision. *Chamber of Commerce of U.S. v. Edmonson*, 594 F.3d 742, 765 (10th Cir. 2010) (citations omitted) (upholding Judge Cauthron's granting of a preliminary injunction on preemption grounds prohibiting Oklahoma from enforcing provisions of the

Oklahoma Taxpayer and Citizen Protection Act relating to immigration and verification of employment eligibility).

## ARGUMENT

**A. BNSF is Likely to Succeed on the Merits because Oklahoma's Blocked Crossing Statute is Preempted by the ICCTA and the FRSA.**

It is settled law that state blocked crossing statutes are not enforceable. "In short, if there is to be a limit on the amount of time that a train is permitted to block a crossing, it must come from the federal government." *CSX Transp., Inc. v. City of Plymouth*, 92 F. Supp. 2d 643, 659 (E.D. Mich. 2000), *aff'd*, 283 F.3d 812 (6th Cir. 2002).

Time and again courts have found such laws preempted by the federal Interstate Commerce Commission Termination Act (the "ICCTA"), 49 U.S.C. § 10101 *et seq*., and the Federal Railway Safety Act (the "FRSA"), 49 U.S.C. § 20101 *et seq*. Oklahoma's Blocked Crossing Statute should meet the same fate.

**1. The ICCTA grants the federal Surface Transportation Board exclusive authority over transportation by rail carriers and the operation of tracks and facilities, expressly preempting Oklahoma's efforts to govern railroad operations through its Blocked Crossing Statute.**

The federal Surface Transportation Board has jurisdiction over "transportation by rail carriers." 49 U.S.C. §§ 10501(b). The ICCTA's remedies with respect to the regulation of rail transportation are "**exclusive and preempt the remedies provided under Federal or <u>State</u> law**." *Id.* (emphasis added).

The ICCTA expansively defines "railroad" to include the road used by a rail carrier and any switch, spur, track, terminal, terminal facility, and a freight depot, yard, and ground, used or necessary for transportation. 49 U.S.C. § 10102(6). The term

"transportation" means "services related to that movement, including receipt, delivery, elevation, transfer in transit…and interchange of passengers and property." 49 U.S.C. § 10102(9). This broad definition includes "virtually any property, track, or vehicle 'related to the movement of passengers or property, or both, by rail.'" *Allied Erecting & Dismantling Co. v. Surface Transp. Bd.*, 835 F.3d 548, 550 (6th Cir. 2016).

Accordingly, the ICCTA "preempts all 'state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation.' What matters is the degree to which the challenged regulation burdens rail transportation . . . ." *Ass'n of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1097-98 (9th Cir. 2010) (quoting *N.Y. Susquehanna & W. Ry. Corp. v. Jackson,* 500 F.3d 238, 252 (3d Cir. 2007)). But "[i]t is difficult to imagine a broader statement of Congress' intent to preempt state regulatory authority over railroad operations." *CSX Transp. Inc. v. Georgia Pub Serv. Comm'n.*, 944 F. Supp. 1573, 1581 (N.D. Ga. 1996). Indeed, "[s]tate or local statutes or regulations are preempted categorically [by the ICCTA] if they have the effect of managing or governing rail transportation." *Delaware v. Surface Transp. Bd.*, 859 F.3d 16, 18 (D.C. Cir. 2017) (internal quotations and citations omitted).

This Court need look no further than the plain language of the following provision to find the Blocked Crossing Statute has the effect of managing railroad operations: "Every railroad **shall be operated** in such a manner as to minimize obstruction of emergency vehicles at public highway grade crossings." 66 O.S. § 190(C)(4) (emphasis added). By

the statute's express language, Oklahoma purports to impose restrictions on the operations of railroads subject to the exclusive jurisdiction of the Surface Transportation Board.

What's more, the Blocked Crossing Statute has the practical effect of managing operations by providing that "no railcar shall be brought to rest in a position which blocks vehicular traffic at a railroad intersection with a public highway or street for longer than ten (10) minutes," and "[r]ailroads or other persons, firms or corporations operating over tracks within the State of Oklahoma shall not block vehicle traffic at any railroad grade crossing for a period of time in excess of ten (10) minutes." 66 O.S. §§ 190(A), (C)(1). These prohibitions "[d]ictate key operational choices....Railroads cannot schedule trains or operate train yards in a way that forces them to stop trains for more than ten minutes at a crossing to repair problems, perform safety checks, or wait for tracks to clear." *State v. Norfolk S. Ry. Co.*, 107 N.E. 3d 468, 476 (Ind. 2018) (holding Indiana's blocked crossing statute was preempted by the ICCTA). Accordingly, the Blocked Crossing Statue is categorically preempted under the rule established in *Delaware*, 859 F.3d at 19.

A finding of preemption would align this Court with the great weight of judicial authority addressing blocked crossing laws, meaning BNSF is very likely to succeed on the merits in this case. *See Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796 (5th Cir. 2011) ("Because Mississippi's antiblocking statute is a direct attempt to manage KCSR's decisions in the economic realm, the statute is completely preempted by the ICCTA."); *CSX Transp., Inc. v. Williams*, No. 3:16CV2242, 2017 WL 1544958, at *2 (N.D. Ohio (2017) (holding that the ICCTA preempted the Ohio statute "because it purports to regulate rail transportation by dictating how railroads conduct their operations at crossings");

*Burlington N. & Santa Fe Ry. Co. v. Dep't of Transp.*, 206 P.3d 261 (Or. 2009) (holding Oregon's antiblocking regulation was "by its express terms, an 'operating rule' and a 'regulation of rail transportation'"); *City of Seattle v. Burlington N. R. Co.*, 41 P.3d 1169 (Wa. 2002) ("The language of the ICCTA is unambiguous. . . . Seattle's ordinances 11.66.080 and 11.66.100 are preempted by the ICCTA."); *People v. Burlington N. Santa Fe R.R.*, 148 Cal. Rptr. 3d 243 (2012) ("The State of California, by regulating the time a stopped train can occupy a public rail crossing, has necessarily and directly attempted to manage railroad operations.").

Just last year, a Kansas state court of appeals struck down Kansas' blocked crossing law on the basis of ICCTA preemption. *State v. BNSF Ry. Co.* 432 P.3d 77 (Kan. App. 2018). The same result was also reached last year by the Indiana Supreme Court. *Norfolk S. Ry. Co.*, 107 N.E. 3d at 476. Kansas's and Indiana's laws were strikingly similar to Oklahoma's, prohibiting railroads from allowing trains or railcars from standing on a public road or crossing for more than 10 minutes at a time. It is likely that Oklahoma's law will meet the same result as its Kansas and Indiana counterparts.

## 2. Oklahoma's Blocked Crossing Statute is preempted by FRSA.

Unlike the ICCTA, which concerns regulation over the economic and operational aspects of railroads, the FRSA was enacted "to 'promote safety in every area of railroad operations and reduce railroad-related accidents and incidents.'" *Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 890 (8th Cir.2012) (quoting 49 U.S.C. § 20101). The FRSA provides the Secretary of Transportation broad power to "prescribe regulations ... for all areas of railroad

safety." *Id.* (quoting 49 U.S.C. § 20103(a)).  Like the ICCTA, the FRSA also contains a

preemption provision:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.  A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order—
> (A) is necessary to eliminate or reduce an essentially local safety or security hazard;
> (B) is not incompatible with a law, regulation, or order of the United States Government; and
> (C) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106(a).  *See also Henning v. Union Pacific R.R. Co*., 530 F.3d 1206, 1211-

12 (10th Cir. 2008).

Preemption occurs when federal regulations substantially subsume the subject

matter of a particular state law.  *Lewis v. Norfolk S. Ry. Co.,* 618 F. Supp. 2d 833, 843

(W.D. Tenn. 2008) (citing *CSX Transp., Inc. v. City of Plymouth,* 92 F. Supp. 2d 643 (E.D.

Mich. 2000), *aff'd,* 283 F.3d 812, 817 (6th Cir. 2002)).  While no federal regulation

expressly addresses the amount of time a train may block a street crossing, federal safety

laws regulating train safety completely occupy the subject of trains blocking crossings.

*Driesen v. Iowa, Chicago & E. R.R. Corp*., 777 F. Supp. 2d 1143, 1149 (N.D. Iowa 2011)

(citing *Norfolk S. Ry. Co. v. Shanklin,* 529 U.S. 344, 352, (2000)).

The Secretary of Transportation has issued regulations setting maximum operating

speeds for different classes of track.   *See* 49 C.F.R. § 213.9(a); *CSX Transp., Inc. v.*

*Easterwood*, 507 U.S. 658, 662 (1993).  The speed limits not only establish a ceiling, but also preclude additional state regulation and should be understood as covering the subject matter of train speed with respect to track conditions, including the conditions posed by grade crossings.  *Easterwood,* 507 U.S. at 674-75.

The Secretary has issued detailed regulations on air brake testing, which provide comprehensive requirements for inspection and testing of brake systems and control the timing and performance of tests and inspections.  *See* 49 C.F.R. §§ 232.201-232.219.  Also relevant to this case, the Secretary has issued regulations establishing the testing required following the removal of a car from a train and the interruption of brake pipe continuity.  *See* 49 C.F.R. § 232.211. The movement of trains is restricted until the tests are completed and brake pipe pressure is restored.  *See id.*  When a train performs switching maneuvers at or near crossings, it must also perform federally mandated air brake inspections and tests before proceeding.  *See* 49 C.F.R. § 232.215.  These regulations apply regardless of whether a "charging station" (essentially an air compressor) is present at the crossing.[2]

Further, the Secretary has issued regulations on grade crossing safety.  *See* 49 C.F.R. §§ 234.105-234.107.  Those regulations control the speed of trains in the event of a failure, partial activation or false activation of a grade crossing warning system and, in some circumstances, require trains to stop before proceeding through a crossing.  *See id.*

---

[2] The Blocked Crossing Statute provides a limited exception for blockages required for performing air tests, but the exception applies only when a "working charging station exists" at the crossing.

The Illinois Supreme Court found,

"These various regulations on train speed, air-brake testing, and grade crossing safety work together to regulate and control the movement of trains at grade crossings.  They control **whether a train may be moved** and the speed of a moving train.  Taken together, the overall structure of these regulations **substantially subsumes the subject matter of the movement of trains at grade crossings**."

*Vill. of Mudelein v. Wisconsin Cent. R.R.*, 882 N.E.2d 544, 553 (Ill. 2008) (emphasis added).  Federal regulations governing train speed **cover the subject matter of blocked crossing laws** because "[t]he amount of time a moving train spends at a grade crossing is mathematically a function of the length of the train and the speed at which the train is traveling."  *Driesen*, 777 F. Supp. at 1151 (citing *CSX Transp., Inc. v. City of Plymouth,* 283 F.3d 812, 817 (6th Cir.2002)); *Vill. of Mundelein,* 882 N.E.2d at 555.  *See also S. Pac. Co. v. Arizona,* 325 U.S. 761, 775 (1945) (holding that state regulation of a train's *length* violates the commerce clause).

The Blocked Crossing Statute, by limiting the amount of time a railcar occupies a crossing, indirectly regulates when and whether a train may be moved and, following the logic of *Driesen* and *Village of Mundelein*, is preempted by the FRSA and the regulations promulgated thereunder.  And, the law's "one-time exception" for certain switching operations and other maneuvers, 66 O.S. § 190(C)(2), is not only impermissibly ambiguous (e.g. one exception per operator, per journey or per some other measurement?), but also fails to save the statute from preemption because it allows only an additional 10 minutes of blockage time regardless of what federal regulations may require with respect to the train's movement.  Likewise, the exception regarding air brake tests codified at 66 O.S. §

190(C)(3) fails to save the statute from preemption because, *inter alia*, the exception is limited to fewer than all circumstances where federal regulations require such testing.

**B. BNSF Will Suffer Immediate, Concrete and Irreparable Harm in the Absence of Preliminary Injunctive Relief by the Court.**

If found to have violated the Blocked Crossing Statute, BNSF faces monetary fines. Because the OCC is imbued with state sovereignty, BNSF lacks a remedy to recoup the fines if the statute later is found to be unenforceable by virtue of federal preemption. *See Ohio Oil Co. v. Conway*, 279 U.S. 813, 815 (1929) (affirming issuance of an injunction in the "absence under the local law of any remedy enforceable by the plaintiff" to recover payments made under an invalid order); *Gov't Suppliers Consolidating Serv. V. Bayh*, 734 F. Supp. 853, 863 (S.D. Ind. 1990) ("The plaintiffs . . . are barred from recovering damages from the state due to the doctrine of sovereign immunity and the eleventh amendment to the Constitution.  Thus, the plaintiffs have no adequate remedy at law.") (internal citations omitted).  Further, BNSF foreseeably faces the immediate threat of multiple citations and enforcement actions issued across the state of Oklahoma because other municipalities are actively encouraging enforcement of the statute at issue. *See* Josh Wallace, *Oklahoma City police ask residents to report trains blocking roads*, The Oklahoman (Aug. 7, 2019), https://oklahoman.com/article/5638004/oklahoma-city-police-asking-residents-to-report-trains-blocking-roads.

Moreover, because the mandates within the Blocked Crossing Statute conflict with federal regulations to which BNSF is subject, compliance with both standards may be impossible in some circumstances.  In those circumstances, exposure to liability could be

significant when accounting for the operation of negligence claims premised on a violation of federal regulations in the event of any accident caused by actions taken to comply with the Blocked Crossing Statute (or vice versa). *See Vermont Railway, Inc. v. Town of Shelburne*, 287 F. Supp. 3d 493, 504 (D. Vt. 2017) ("[T]he only adequate remedy for this injury is to enjoin the enforcement of the Storage Ordinance. Monetary damages will not suffice, as it is not feasible for the Railway to operate in constant violation of a Town ordinance.").[3]

**C. The Harm to BNSF Substantially Outweighs Any Risk of Harm to the OCC, Davis or Edmond.**

BNSF's harm likely will outweigh any harm potentially suffered by the OCC, Edmond or Davis if an injunction is issued. In fact, it is difficult to imagine what harm would result to any Defendant by not enforcing the Blocked Crossing Statute which has been in effect only since July 1, 2019, and which had no predecessor in effect in the 130 plus years that BNSF and its predecessor railroads have been operating in Oklahoma.[4]

---

[3] There are other potential economic harms associated with infrastructure and operational changes that compliance with the Oklahoma Blocked Crossing Statute might necessitate. BNSF reserves the right to present evidence of such harm at a hearing on this Motion.

[4] One of BNSF's predecessor lines, the Atchison, Topeka, and Santa Fe ("ATSF") built the line going through what is now Edmond and Davis after acquiring its right of way by an 1884 Act of Congress. Act of July 4th, 1884, chaps. 177, 179, 48 Stat. 69, 73 (1884). The town of Edmond, which was established two years after the construction of the rail line, is named for Edmond Burdick, an ATSF traveling freight agent. Barbara Granger, "Edmond," The Encyclopedia of Oklahoma History and Culture, https://www.okhistory.org/publications/enc/entry.php?entry=ED002 (page visited Aug. 22, 2019).

**D. The Public Interest Will Not be Adversely Affected by the Granting of an Injunction.**

The stated purpose of the Blocked Crossing Statute to further the safety and welfare of the people of the state of Oklahoma will not be undermined by the issuance of a temporary injunction during the pendency of this matter.  66 O.S. § 190(A).  In Edmond, one of the crossings over the BNSF main line and siding is grade separated (i.e., an underpass), and in Davis, there is a grade-separated crossing south of the siding approximately three miles (in driving distance) from the Main Street crossing.  Thus, when a train is stopped in the sidings at either Edmond or Davis, there remains a means of crossing the tracks.  The availability of alternative access thus underscores the questionable nature of the purported safety threat the Blocked Crossing Statute seeks to address given that no such statute was deemed necessary until last month (despite a long history of railroad operation in Oklahoma).  The existence of a threat is further undermined by the reality that the Blocked Crossing Statute is replete with exceptions to its own rule that are unrelated to safety.  *Id.* §§ 190(C)(1)-(C)(2)(c).

## CONCLUSION

WHEREFORE, for all the above stated reasons, the Court should grant BNSF's Motion for Preliminary Injunction and enjoin Edmond, Davis and the OCC from any further efforts to enforce the Blocked Crossing Statute against BNSF, including through continued prosecution of proceedings pending before the OCC or issuance of additional citations, until such time as the merits of this matter can be determined.

Respectfully Submitted,

*/S/ R. Richard Love, III*
R. Richard Love, III, OBA #14770
J. Dillon Curran, OBA #19442
Bryan R. Lynch, OBA #33559
1700 One Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102-7101
405/ 272-5711
rlove@cwlaw.com
dcurran@cwlaw.com
blynch@cwlaw.com

**Attorneys for Plaintiff BNSF Railway Company**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 28, 2019, I caused a true and correct copy of the foregoing to be delivered upon the following:

Todd Hiett, Chairman
Oklahoma Corporation Commission
2101 North Lincoln Boulevard
Oklahoma City, Oklahoma 73105

Bob Anthony, Vice-Chairman
Oklahoma Corporation Commission
2101 North Lincoln Boulevard
Oklahoma City, Oklahoma 73105

Dana Murphy, Commissioner
Oklahoma Corporation Commission
2101 North Lincoln Boulevard
Oklahoma City, Oklahoma 73105

Steve Murdock
City Attorney
City of Edmond, Oklahoma
P.O. Box 2970
Edmond, Oklahoma 73083
steve.murdock@edmondok.com

Paul L. Lakin
Assistant City Attorney
City of Edmond, Oklahoma
P.O. Box 2970
Edmond, Oklahoma 73083

Mark Melton
City Attorney
City of Davis, Oklahoma
227 East Main
Davis, Oklahoma 73030
mark@meltonlaw.org

*/s/ J. Dillon Curran*
J. Dillon Curran