## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

BNSF RAILWAY COMPANY,    )
A Delaware Corporation,    )
    )
    Plaintiff,    )
    )
v.    )    **Case No. CIV-19-769-G**
    )
CITY OF EDMOND, OKLAHOMA,    )
et al.,    )
    )
    Defendants.    )

## MEMORANDUM OPINION AND ORDER

Plaintiff BNSF Railway Company has filed this lawsuit challenging the constitutionality of Oklahoma's recently enacted "Blocked Crossing Statute" (or the "Statute"), Okla. Stat. tit. 66, § 190. Plaintiff's Complaint seeks declaratory and injunctive relief and names five Defendants. Two are municipal corporations: (1) City of Edmond, Oklahoma ("Edmond"); and (2) City of Davis, Oklahoma ("Davis"). *See* Compl. (Doc. No. 1) at 1-2. Three are individuals sued in their capacity as officials on the Oklahoma Corporation Commission ("OCC"): (3) Todd Hiett (OCC Chairman); (4) Bob Anthony (OCC Vice-Chairman); and (5) Dana Murphy (OCC Commissioner) (collectively, the "OCC Defendants"). *See id.* In addition, on October 30, 2019, the Court granted Mike Hunter leave to intervene as a defendant in this lawsuit in his official capacity as Attorney General of the State of Oklahoma. *See* Doc. No. 37.

Now before the Court are cross-motions for summary judgment. Plaintiff has filed a Motion for Summary Judgment (Doc. No. 46), as to which several Responses (Doc. Nos. 53, 54, 55, 56), and a Reply (Doc. No. 57) have been filed. In addition, Defendant Hunter

has filed a Motion for Summary Judgment (Doc. No. 48), which is joined by Motions from the OCC Defendants (Doc. No. 49) and Defendant Edmond (Doc. No. 50) and supported by Defendant Davis (Doc. No. 51). Plaintiff has responded (Doc. No. 52), and Defendants Hunter and Edmond have filed Replies (Doc. Nos. 58, 59).[1]

All motions now being at issue, the Court addresses them below.

I.      *Standard of Review*

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat summary judgment, the nonmovant must cite specific evidence sufficient to show that a genuine issue remains for trial. *See Ezell v. BNSF Ry. Co.*, 949 F.3d 1274, 1278 (10th Cir. 2020); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (noting that the court must inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

---

[1] The other Defendants adopt the arguments raised by Defendant Hunter, although the OCC Defendants additionally seek summary judgment on the ground that they are improperly joined as parties to this lawsuit. *See* OCC Defs. Mot. (Doc. No. 49) at 1-2. The Court rejected this argument in its Order of October 30, 2019, and does so again upon this reurging for the reasons previously stated. *See* Order (Doc. No. 38) at 5-6.

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

The Tenth Circuit has explained that

"The filing of cross-motions for summary judgment does not necessarily concede the absence of a material issue of fact. This must be so because by the filing of a motion a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 324-25 (10th Cir. 1967). Accordingly, "[c]ross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts.'" *Id.*

*Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (internal citation omitted).

II.     *The Challenged Statute*

On July 1, 2019, the Blocked Crossing Statute took effect. The Statute provides:

A. As it is immediately necessary for the safety and welfare of the people, no railcar shall be brought to rest in a position which blocks vehicular traffic at

a railroad intersection with a public highway or street for longer than ten (10) minutes.

B. Municipalities, county sheriffs and the Oklahoma Highway Patrol shall have the authority to issue a citation to any person or corporation that violates a provision of this section.  Such person or corporation shall be subject to a fine of up to One Thousand Dollars ($1,000.00) for each violation.  Seventy-five percent (75%) of the collected fine shall be deposited to the credit of the general fund of the entity that issued the citation and the remaining twenty-five percent (25%) shall be credited to the Corporation Commission Revolving Fund established in Section 180.7 of Title 17 of the Oklahoma Statutes.  A copy of the citation, along with any information regarding train identification, shall be sent to the Corporation Commission for enforcement of the penalty at a hearing before an administrative law judge of the Commission.   The violating entity or individual may appeal the administrative law judge's decision to the Commission en banc.   The Commission shall annually deliver an electronic report detailing the number of violations, number of rulings, number of appeals and amount of fines assessed under this section.  Commission reports shall be delivered to the Speaker of the Oklahoma House of Representatives, the President Pro Tempore of the Oklahoma State Senate and the Governor.  The Commission shall promulgate rules and procedures to effectuate the provisions of this section.

C. 1. Railroads or other persons, firms or corporations operating over tracks within the State of Oklahoma shall not block vehicle traffic at any railroad grade crossing for a period of time in excess of ten (10) minutes except if the train is moving in a continuous forward or backward direction, or if the train is stopped for an emergency condition, including an accident, derailment, critical mechanical failure, track or bridge washout, storm, flood or other emergency situation.

2. A one-time exception of up to, but not exceeding, ten (10) additional minutes shall be authorized under the following conditions:

> a. when a train and its crew, operating under the rules of the Federal Railroad Administration (FRA), are unable to complete a switching maneuver while setting out or picking up railcars within the ten (10) minutes as set forth in paragraph 1 of this subsection,

> b. when a train is stopped to allow the passage of a second train and the stopped train has exhausted the ten (10) minutes as set forth in paragraph 1 of this subsection, or if the arrival of the second train is imminent and

separation and coupling of the stopped train would result in further unnecessary blocking of motor vehicle or pedestrian traffic, and

c. when a train is stopped for a red train signal.

3. When a train is cut or separated to prevent blocking of motor vehicle traffic at a public crossing, and a working charging station exists, the time required for recoupling a train and performing air tests as required by the FRA shall not be considered a violation of this section.

4. Every railroad shall be operated in such a manner as to minimize obstruction of emergency vehicles at public highway grade crossings.

Okla. Stat. tit. 66, § 190; *see also* Okla. Admin. Code § 165:32-1-13 (2019) (specifying the procedure for the OCC's enforcement of blocked crossing citations).

On August 22, 2019, Plaintiff filed this lawsuit, alleging that the Blocked Crossing Statute is preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§ 10101 et seq., and by the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. §§ 20101 et seq. *See* Compl. ¶¶ 13, 15-19, 22-27. Plaintiff seeks declaratory and injunctive relief. *See id.* ¶¶ 28-29. On October 30, 2019, the Court entered a preliminary injunction prohibiting enforcement of the Blocked Crossing Statute pending a final determination in this matter. *See* Doc. No. 40.

III. *Undisputed Material Facts*

Plaintiff is a railroad company that operates interstate trains throughout the United States for compensation, including 952 route miles in the State of Oklahoma. Aff. of Jeffrey Garrels ("Garrels Aff.) (Doc. No. 14-3) ¶ 5.

On July 17, 2019, and July 29, 2019, a City of Edmond police officer issued separate citations to Plaintiff alleging violations of the Blocked Crossing Statute at intersections

within the City of Edmond.  Compl. ¶ 8; Def. Edmond Answer (Doc. No. 18) ¶ 9; Def. Hunter Answer (Doc. No. 43) ¶ 4; OCC Defs. Answer (Doc. No. 44) ¶ 4; *see also* Compl. Ex. 1 (Doc. No. 1-1).  On July 30, 2019, the City of Edmond's Assistant City Attorney filed a complaint against Plaintiff before the OCC to institute enforcement proceedings for the two Edmond citations, and the OCC Secretary issued a Citation and Notice of Hearing, setting a hearing for contempt on August 28, 2019.  Compl. ¶ 9; Def. Edmond Answer ¶ 10; Def. Hunter Answer ¶ 4; OCC Defs. Answer ¶ 4; *see also* Compl. Ex. 1.

On July 16, 2019, a City of Davis police officer issued a citation to Plaintiff alleging violation of the Blocked Crossing Statute at an intersection or intersections within the City of Davis.  Compl. ¶ 10; Def. Davis Answer (Doc. No. 27) ¶ 10; Def. Hunter Answer ¶ 5; OCC Defs. Answer ¶ 5; *see also* Compl. Ex. 2 (Doc. No. 1-2).  On August 1, 2019, the City of Davis's City Attorney filed a complaint against Plaintiff before the OCC to institute enforcement proceedings for the Davis citation, and the OCC Secretary issued a Citation and Notice of Hearing, setting a hearing for contempt on August 28, 2019.  Compl. ¶ 11; Def. Davis Answer ¶ 11; Def. Hunter Answer ¶ 5; OCC Defs. Answer ¶ 5; *see also* Compl. Ex. 2 (Doc. No. 1-2).

During the course of a train's travel to its destination, the train may make temporary stops.  Garrels Aff. ¶ 6.  Various factors affect the occurrence and duration of a stoppage, including: conditions elsewhere on the interstate railroad system; federal statutory and regulatory requirements (i.e., limitations on crew working hours or mandatory testing);

operational, safety, and economic considerations; and infrastructure limitations.  *Id.* ¶ 7.[2]
A common cause of train stoppage during travel is the need to allow an approaching train
traveling in the opposite direction to pass, which is called a Meet and Pass maneuver.  *Id.*
¶ 8.  Where a Meet and Pass will occur is affected by the train schedule and timetable (i.e.,
when the trains are traveling and when they must arrive at their destination), the speed of
the traveling trains (i.e., where, as the trains approach one another, they will "meet"), the
existence of the rail infrastructure necessary to accommodate the Meet and Pass (i.e., a
siding separate from the main line on which the stopped train can be held while the other
train passes), and the availability of the necessary infrastructure (i.e., whether it is
otherwise occupied), among other operational and emergency considerations.  *Id.* ¶ 9.
Which train stops is similarly dictated by the available infrastructure (i.e., the size and
location of a siding) and by train speed and schedule (i.e., when a train will arrive at the
siding).  Additionally, some trains carry freight, such as hazardous materials, and such
trains receive priority due to federal requirements that these shipments be forwarded to
their destinations without delay.  *Id.* ¶ 10.

---

[2] To support its general assertions regarding train stoppages, Plaintiff cites the affidavit
testimony of Jeffrey Garrels, who has been employed by BNSF for 24 years in various
capacities and currently serves as the Director of Operating Rules.  *See* Garrels Aff. ¶ 2.
Defendants challenge these assertions as "ha[ving] no underlying factual basis" due to
BNSF's failure to keep a stoppage log.  Def. Hunter Resp. (Doc. No. 53) at 8; *see also id.*
at 10-11.  Mr. Garrels testified under oath, however, that he is "familiar with BNSF's
infrastructure, operations . . . and federal regulatory compliance" and that his statements
"are based on [his] personal knowledge."  Garrels Aff. ¶¶ 3-4.  Accordingly, the Court does
not find a genuine dispute as to these facts or as to whether Mr. Garrels "is competent to
testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

Whether a stopped train blocks a grade (or street-level) crossing is also dictated by various factors, such as whether the siding intersects with a grade crossing, the length of the siding and of the train (i.e., whether the train can fit in a siding without blocking an intersecting grade crossing), and other operational and emergency considerations.  *Id.* ¶ 11. The duration of a stoppage is dictated by, among other things, the travel speed and length of the passing train (i.e., how long it will take the train to pass), the time required to comply with federally and internally mandated tests and procedures for stopping and restarting a train, and conditions elsewhere on the interstate railroad system (i.e., whether the tracks are clear ahead of the stopped train).  *Id.* ¶ 12.

On July 17, 2019, a BNSF train occupied the siding (or "side track") in Edmond, Oklahoma, from 2:47 p.m. until 4:07 p.m. for a Meet and Pass to allow passage of two other trains on the main line.  *Id.* ¶ 13.  While occupying the siding, the train blocked one or more grade crossings in Edmond.  *Id.*  On July 29, 2019, a BNSF train occupied the siding in Edmond, Oklahoma, from 9:55 a.m. until 10:32 a.m. for a Meet and Pass to allow passage of another train on the mainline.  *Id.* ¶ 14.  While occupying the siding, the train blocked one or more grade crossings in Edmond.  *Id.*  On July 16, 2019, a BNSF train occupied the siding in Davis, Oklahoma, from 9:54 a.m. until 10:32 a.m. for a Meet and Pass to allow passage of two other trains on the main line.  *Id.* ¶ 15.  While occupying the siding, the train blocked one or more grade crossings in Davis.  *Id.*

IV.   *Federal Preemption of the Blocked Crossing Statute*

Plaintiff's primary argument is that Oklahoma's Blocked Crossing Statute is facially unconstitutional because the Statute is expressly preempted by the ICCTA, 49 U.S.C.

8

§ 10501(b), such that enforcement of the Statute violates the Supremacy Clause of the United States Constitution. *See* Pl.'s Mot. (Doc. No. 46) at 13-19. Alternatively, Plaintiff asserts that the Statute is expressly preempted by the FRSA, 49 U.S.C. § 20106(a). *See id.* at 19-24. *See generally* Compl. ¶¶ 15-29.

Defendants respond that the ICCTA is the "wrong statute for this case," and, further, that there is no preemption under "the right statute"—i.e., the FRSA. Def. Hunter Reply (Doc. No. 58) at 6, 7 n.4. Defendants assert, essentially, that although state and local blocked-crossing laws have been repeatedly found to be preempted by federal law, the courts so holding have failed to properly appreciate the federal statutory landscape and/or have failed to correctly assess FRSA preemption. *See* Def. Hunter Mot. (Doc. No. 48) at 11-32.

### A. The Supremacy Clause and Federal Preemption

As explained by the Tenth Circuit,

> The Supremacy Clause provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Pursuant to this provision, Congress has the power to enact statutes that preempt state law. *Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kan.*, 489 U.S. 493, 509, 109 S.Ct. 1262, 103 L.Ed.2d 509 (1989). Thus, preemption is ultimately a question of congressional intent. *See Altria Grp., Inc. v. Good*, 555 U.S. 70, 129 S.Ct. 538, 543, 172 L.Ed.2d 398 (2008) (recognizing that "the purpose of Congress is the ultimate touchstone in every pre-emption case" (internal quotation marks and brackets omitted)). "Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose." *Id.*

*US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010).

"Evidence of pre-emptive purpose is sought in the text and structure of the statute at issue." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). "If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Id.*

### B.  The ICCTA

The Tenth Circuit has explained that "Congress's purpose in passing the ICCTA was to establish an exclusive Federal scheme of economic regulation and deregulation for railroad transportation," although the statute "does not completely remove any ability of state or local authorities to take action that affects railroad property." *Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126, 1132 (10th Cir. 2007) (internal quotation marks omitted). Pursuant to the ICCTA, the federal Surface Transportation Board ("STB") has jurisdiction over transportation by rail carrier that is conducted by railroad within and among the States. *See* 49 U.S.C. § 10501(a)(1)(A), (2).  The statute governing preemption prescribes:

> The jurisdiction of the [STB] over—
>
> > (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
> >
> > (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive.  Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

*Id.* § 10501(b).

A "rail carrier" "provid[es] common carrier railroad transportation for compensation," and "transportation" is defined to include "a locomotive, car, vehicle, . . . or equipment of any kind related to the movement of passengers or property, or both, by rail" and "services related to that movement." *Id.* § 10102(5), (9). The parties do not dispute that Plaintiff is a rail carrier engaged in transportation within the meaning of the ICCTA.

### C. Discussion

#### 1. Preemption Under the ICCTA

A review of judicial decisions from the past two decades reflects that many state and local governments have enacted restrictions upon the length of time a railcar may block a grade-level crossing. Such a review also reflects that the federal and state courts to consider ICCTA preemption have uniformly found those restrictions to fall within the scope of the exclusive jurisdiction and exclusive remedies dictated by § 10501(b) and, therefore, to be preempted by federal law.

In *Friberg v. Kansas City Southern Railway Co.*, the Fifth Circuit examined a Texas statute that, similarly to the Blocked Crossing Statute, prohibited railroads from blocking grade-level crossings for more than five or ten minutes. *See Friberg*, 267 F.3d 439, 441 n.2 (5th Cir. 2001). The appellate court found that the "plain language" of the ICCTA's preemption provision "could not be more precise, and it is beyond peradventure that regulation of KCS train operations, as well as the construction and operation of the KCS side tracks, is under the exclusive jurisdiction of the STB unless some other provision in

the ICCTA provides otherwise."  *Id.* at 443.  Accordingly, the court held that the Texas

blocked-crossing statute was preempted by the ICCTA:

> Nothing in the ICCTA otherwise provides authority for a state to impose operating limitations on a railroad like those imposed by the Texas Anti–Blocking Statute, nor does the all-encompassing language of the ICCTA's preemption clause permit the federal statute to be circumvented by allowing liability to accrue under state common law, where that liability arises from a railroad's economic decisions such as those pertaining to train length, speed or scheduling.

*Id.* at 444.

Numerous decisions are in accord.  *See, e.g.*, *Elam v. Kan. City S. Ry. Co.*, 635 F.3d

796, 807 (5th Cir. 2011) ("Because Mississippi's antiblocking statute is a direct attempt to

manage KCSR's decisions in the economic realm, the statute is completely preempted by

the ICCTA."); *CSX Transp., Inc. v. Williams*, No. 3:16CV2242, 2017 WL 1544958, at *2

(N.D. Ohio Apr. 28, 2017) ("I find that the ICCTA categorically preempts [Ohio's blocked-

crossing statute] because it purports to regulate rail transportation by dictating how

railroads conduct their operations at crossings."); *People v. Burlington N. Santa Fe R.R.*,

148 Cal. Rptr. 3d 243, 256 (Cal. Ct. App. 2012) ("The State of California, by regulating

the time a stopped train can occupy a public rail crossing, has necessarily and directly

attempted to manage railroad operations.  Accordingly, we conclude that general order No.

135 is preempted by the ICCTA."); *Burlington N. & Santa Fe Ry. Co. v. Dep't of Transp.*,

206 P.3d 261, 264-65 (Or. Ct. App. 2009) (holding that a blocked-crossing law was

preempted under ICCTA, even though it included an exception for moving trains, because

the law "specifically target[ed] rail transportation" and "[n]ot all railroad 'operations' are

conducted while the train is continuously moving"); *see also Walton v. Kan. City. S. Ry.*

*Co.*, No. 1:18-cv-00004-GHD-DAS, 2019 WL 1460883, at \*2 (N.D. Miss. Apr. 1, 2019) (holding that plaintiff's negligence claim for blocking the track "threaten[ed] to control how long a company may leave its trains on a track" and that the ICCTA "vests the right to regulate that action exclusively with the STB"); *Paulk v. CSX Transp., Inc.*, No. CV-509-045, 2010 WL 11520587, at \*2-3 (S.D. Ga. July 9, 2010) (holding that plaintiffs may not seek state-law remedies in connection with the railroad's blockage of a side track because "their claims are expressly preempted by the plain language of § 10501(b)").

The Court finds the reasoning in these cases instructive.  The Blocked Crossing Statute, by its terms, purports to manage or govern the railroad's operating choices:

> The statute's bar on blocking grade crossings for more than ten minutes dictates key operational choices.  Railroads cannot run trains too slowly or make them too long, lest they take more than ten minutes to clear a crossing. *See CSX Transp., Inc. v. City of Plymouth*, 283 F.3d 812, 817 (6th Cir. 2002) ("[T]he amount of time a moving train spends at a grade crossing is mathematically a function of the length of the train and the speed at which the train is traveling.").  Railroads also cannot schedule trains or operate trainyards in a way that forces them to stop trains for more than ten minutes at a crossing to repair problems, perform safety checks, or wait for tracks to clear.

*State v. Norfolk S. Ry. Co.*, 107 N.E.3d 468, 476 (Ind. 2018) (holding that Indiana's blocked-crossing statute was preempted under ICCTA); *accord State v. BNSF Ry. Co.*, 432 P.3d 77, 86-87 (Kan. Ct. App. 2018); *see* Okla. Stat. tit. 66, § 190(C)(1) ("Railroads or other persons, firms or corporations operating over tracks within the State of Oklahoma shall not block vehicle traffic at any railroad grade crossing for a period of time in excess of ten (10) minutes except if the train is moving in a continuous forward or backward direction, or if the train is stopped for an emergency condition . . . .").  Although Defendants

portray the subject of the Statute as the regulation and safety of crossings, with only an incidental effect on the trains themselves, the Statute "has no application except with respect to the operation of railroads at rail crossings." *Elam*, 635 F.3d at 807; *cf. Driesen v. Iowa, Chi. & E. R.R.*, 777 F. Supp. 2d 1143, 1151 (N.D. Iowa 2011) ("[I]t is well established in the overwhelming majority of federal and state courts to consider the matter that the subject matter of blocked-crossing laws is the movement of trains through grade crossings.").

The Tenth Circuit has not directly addressed the preemption of blocked-crossing laws but has approvingly relied upon the reasoning of *Friberg* in decisions addressing the "broad jurisdictional grant" and "express preemption clause" of § 10501(b). *Port City Props. v. Union Pac. R.R.*, 518 F.3d 1186, 1188 (10th Cir. 2008). In *Emerson*, the Tenth Circuit concluded that the ICCTA did not expressly preempt state-law tort claims brought by landowners against railroads who had improperly discarded old railroad ties. *See Emerson*, 503 F.3d at 1130-32. In doing so, the appellate court emphasized that the "expansive" definition of "transportation" in the ICCTA did not extend to "the Railroad's disposal of waste and maintenance of [a] ditch." *Id.* at 1129-30. The Tenth Circuit specifically contrasted its rationale for finding nonpreemption with the holding of *Friberg*, explaining:

> Though the court[] in *Friberg* . . . concluded that the state law[] in question w[as] preempted, [its] reasoning supports our conclusion of non-preemption. The[] court[] looked to the ICCTA's plain language and found a statutory provision that expressly granted the STB authority to govern the railroads' allegedly tortious actions. The court[] also found that the state['s] regulations would have an adverse economic effect on aspects of the railroads' operations that are within the STB's exclusive jurisdiction. Here,

14

> in contrast, no ICCTA provision gives the STB authority to dictate how the Railroad should dispose of detritus or maintain drainage ditch vegetation. Nor would the state remedies adversely affect the economic aspects of the Railroad's operations subject to STB control.

*Id.* at 1132.

In accordance with the authorities cited above, the Court concludes that by "'regulat[ing] the time a train can occupy a rail crossing," the Blocked Crossing Statute "impacts, in such areas as train speed, length and scheduling, the way a railroad operates its trains, with concomitant economic ramifications,'" and therefore is expressly preempted by the ICCTA. *Id.* (alteration omitted) (quoting *Friberg*, 267 F.3d at 443); *see also* 49 U.S.C. § 10501(b); Garrels Aff. ¶¶ 6-15.

### 2. *Inapplicability of the FRSA*

Generally, the Court's finding of preemption under the ICCTA would be "the end of the line," with no need to address potential preemption under any other federal statutes. *Norfolk S. Ry. Co.*, 107 N.E.3d at 477; *accord BNSF Ry. Co.*, 432 P.3d at 87. Defendants argue, however, that preemption of the Blocked Crossing Statute must be evaluated under a different expression of Congressional intent—that set forth in the FRSA—and the Blocked Crossing Statute is not subject to preemption under that statute. *See* Def. Hunter Resp. at 13-35; Def. Hunter Mot. at 11-32.

The relevant provision of the FRSA prescribes:

> (a) National uniformity of regulation.—(1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.

> (2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with

respect to railroad safety matters), or the Secretary of Homeland Security
(with respect to railroad security matters), prescribes a regulation or issues
an order covering the subject matter of the State requirement. A State may
adopt or continue in force an additional or more stringent law, regulation, or
order related to railroad safety or security when the law, regulation, or
order—

> (A) is necessary to eliminate or reduce an essentially local safety or
> security hazard;
>
> (B) is not incompatible with a law, regulation, or order of the United
> States Government; and
>
> (C) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106(a); *see also Easterwood*, 507 U.S. at 662 (discussing § 20106(a)'s

"saving and pre-emption clauses").

According to Defendants, the Blocked Crossing Statute is "related to railroad

safety," which is regulated by the Federal Railroad Administration ("FRA") rather than the

STB, such that any potential preemption is determined entirely by reference to the FRSA

and without consideration of the ICCTA.  Def. Hunter Resp. at 21; *see also* 49 U.S.C. §

20106(a)(2).  To support this view, Defendants rely upon the reasoning applied by courts

outside the Tenth Circuit in decisions assessing the jurisdictional limits of the two federal

statutes and the issues within the purview of each federal governing body.  *See, e.g.*, Def.

Hunter Resp. at 13-23.  Defendants also proffer evidence and affidavit testimony to attempt

to bolster their premise that the Blocked Crossing Statute in particular was enacted for

railroad-safety purposes.  *See, e.g.*, *id.* at 9-10; *id.* Exs. 1-4 (Doc. Nos. 53-1 to 53-4).

Defendants primarily look to *Tyrrell v. Norfolk Southern Railway Co.*, in which the

Sixth Circuit Court of Appeals explained that a "state rail safety law" should not be found

to be preempted under the ICCTA if it only "tangentially touches upon an economic area

regulated under" that statute.  *Tyrrell*, 248 F.3d 517, 522 (6th Cir. 2001); *see also id.* at 523 ("Congress vested the FRA with primary authority over national rail safety policy and assigned the STB the duty to encourage 'safe and suitable working conditions' for railway employees through its assessment of individual railway proposals subject to its authority.").  Defendants assert that because there are "potential safety aspects that arise from complying with" the Blocked Crossing Statute, blocked crossings are a railroad-safety issue committed solely to the FRA's authority, with preemption determined only by reference to the FRSA.  *See, e.g.*, Def. Hunter Mot. at 16 (citing *Tyrrell*, 248 F.3d at 523).

The Court is not convinced. Neither *Tyrrell* nor the other decisions cited by Defendants as authority for the proposition that Oklahoma's Blocked Crossing Statute should be considered exclusively under the FRSA were, in fact, addressing the FRSA's application to a blocked-crossing law.  *See Tyrrell*, 248 F.3d at 520 (examining a track-clearance requirement); *Iowa, Chi. & E. R.R. v. Wash. Cnty.*, 384 F.3d 557, 558 & n.1 (8th Cir. 2004) (statute requiring railroads' construction and upkeep of bridges); *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 99 (2d Cir. 2009) (private rail-crossing closure order); *Bos. & Me. Corp. v. Surface Transp. Bd.*, 364 F.3d 318, 319 (D.C. Cir. 2004) (STB order regarding train speed limit); *see also Burlington N. Santa Fe R.R.*, 148 Cal. Rptr. 3d at 253 ("*IC&E Railroad* did not involve an attempt to regulate how trains operate on railroad tracks.").

In addition, assuming that Defendants' evidence is accepted for summary-judgment purposes,[3] the issues cited by Defendants as addressed by the Blocked Crossing Statute—such as pedestrians wending their way through stopped trains and the delay of emergency vehicles—are "local public safety issues, not issues of *railroad* safety." *Burlington N. Santa Fe R.R.*, 148 Cal. Rptr. 3d at 252 (emphasis added) (declining to address blocked-crossing rule under FRSA); *cf.* Okla. Stat. tit. 66, § 190(A) ("As it is immediately necessary for the safety and welfare of the people . . . ."); Def. Hunter Mot. Ex. 1 (Doc. No. 48-1) (FRA request for comment listing only "societal nuisances," "economic impacts," and "safety concerns" regarding pedestrians, emergency responders, and automobiles as the basis for further agency inquiry into blocked crossings). The concerns highlighted by the State "do not create a hazard to the railroad system or its participants—they pose a hazard only in the local communities in which the blockages occur." *Burlington N. Santa Fe R.R.*, 148 Cal. Rptr. 3d at 252 (internal quotation marks omitted).

Finally, even if it were allowed that the Blocked Crossing Statute relates to "railroad safety" within the meaning of the FRSA, Defendants fail to adequately establish that the federal statutes are mutually exclusive, such that preemption under the ICCTA is thereby foreclosed. *See* Pl.'s Reply at 6-7; *see, e.g.*, *In re Waneck*, FD-36167, 2018 WL 5723286, at \*7 (S.T.B. Oct. 31, 2018) ("[I]n rare cases, there can be overlap to such an extent that

---

[3] Plaintiff challenges Defendants' proffered affidavits on the basis of unfair surprise and raises several evidentiary objections to other items cited by Defendants. *See* Pl.'s Reply (Doc. No. 57) at 4; Pl.'s Resp. (Doc. No. 52) at 8, 11; Fed. R. Civ. P. 56(c)(2), (e). The Court assumes for purposes of deciding the present motions that the challenged material is admissible and may be considered.

both FRSA and ICCTA preemption may apply."); *see also Emerson*, 503 F.3d at 1130 (explaining that the Tenth Circuit looks to STB rulings regarding the ICCTA's preemptive scope because the STB is "uniquely qualified to determine whether state law should be preempted by the ICCTA" (alteration and internal quotation marks omitted)); *cf. Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 914 N.W.2d 273, 289 (Iowa 2018) (explaining that the FRSA's savings clause does not protect state-law claims from preemption by the ICCTA).

Blocked train crossings indisputably have safety implications. And, certainly, a state or local government can address grade-level railroad crossing issues in a manner that does not run afoul of federal law. *See, e.g.*, *Easterwood*, 507 U.S. at 661, 670-73, 674-75 (holding that the plaintiff's negligence claim based upon operation of train at an excessive speed was preempted by the FRSA, but a claim based upon failure to maintain adequate warning devices was not). The Court does not conclude that *any* statute relating to blocked crossings is prohibited. But a statute that tells railroad companies how long they may stop their trains—for whatever ends—intrudes on the territory reserved to the ICCTA. In short, Defendants fail to undermine the Court's finding of ICCTA preemption outlined above.[4]

## V.    *Entry of a Permanent Injunction*

For a litigant to obtain a permanent injunction, "it must prove: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury

---

[4] Courts that have examined blocked-crossing laws under the FRSA have consistently found them to be preempted, contrary to the novel argument advanced by Defendants. *See, e.g.*, *Driesen*, 777 F. Supp. 3d at 1154; *City of Plymouth*, 283 F.3d at 817.

outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007) (internal quotation marks omitted). "The only measurable difference" between the standard required for entry of a preliminary injunction and that for permanent injunctive relief "is that a permanent injunction requires showing actual success on the merits, whereas a preliminary injunction requires showing a substantial likelihood of success on the merits." *Id.*

The Court has previously found that Plaintiff had proved the elements relating to irreparable harm, the balance of injuries, and the public interest for purposes of issuance of a preliminary injunction. *See* Order of Oct. 30, 2019 (Doc. No. 39) at 4-6. Defendants do not contest Plaintiff's showing on these factors, and the Court finds that they likewise are met for purposes of permanent relief. *Cf. Doe v. Ky. ex rel. Tilley*, 283 F. Supp. 3d 608, 615 (E.D. Ky. 2017) (finding that the irreparable harm to plaintiff "flow[ed] naturally from the constitutional violations caused by the laws"); *Planned Parenthood of Ark. & E. Okla. v. Cline*, 910 F. Supp. 2d 1300, 1308 (W.D. Okla. 2012) ("The plaintiff has an interest in prevention of violations of its constitutional rights, whereas the defendant has no interest in being allowed to act in an unconstitutional manner."). Defendants now dispute only the showing of actual success on the merits. *See* Def. Hunter Resp. at 35.

As outlined above, the Court has determined that Plaintiff is entitled to a declaratory judgment in its favor regarding enforceability of the Blocked Crossing Statute. Accordingly, entry of a permanent injunction is warranted. *See Ass'n of Am. R.R.s v. Hatfield*, 435 F. Supp. 3d 769, 781-82 (E.D. Ky. 2020) ("[F]ederal courts may properly

enjoin state officers where they 'threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution.'" (quoting *Ex parte Young*, 209 U.S. 123, 156 (1908))).

CONCLUSION

The Court finds, for the foregoing reasons, that Plaintiff has shown that title 66, section 190 of the Oklahoma Statutes (2019) is expressly preempted by the Interstate Commerce Commission Termination Act, 49 U.S.C. §§ 10101 et seq., and is therefore facially unconstitutional.  No genuine factual issue necessitates a trial on the merits of this case.  Plaintiff is therefore entitled to judgment as a matter of law.

Accordingly:

(1) Plaintiff's Motion for Summary Judgment (Doc. No. 46) is GRANTED;

(2) Defendants' Motions for Summary Judgment (Doc. Nos. 48, 49, 50) are DENIED; and

(3) Enforcement of title 66, section 190 of the Oklahoma Statutes is hereby ENJOINED.

A separate judgment shall be issued.

IT IS SO ORDERED this 30th day of November, 2020.

CHARLES B. GOODWIN
United States District Judge